# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| **CHRISTINE J. TODD,** | **CV 13-154-BLG-SEH-CSO** |
| **Plaintiff,** | |
| | **FINDINGS AND** |
| **vs.** | **RECOMMENDATIONS** |
| | **OF UNITED STATES** |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | **MAGISTRATE JUDGE** |
| **Defendant.** | |

Plaintiff Christine J. Todd ("Todd"), appearing *pro se*, seeks judicial review of Defendant Acting Commissioner of Social Security's ("Commissioner") decision denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. *Cmplt. (ECF 3).*[1]  On June 18, 2014, Judge Haddon referred this case to the undersigned for proposed findings of fact and recommendations for disposition of all motions excepted from magistrate judge jurisdiction by 28 U.S.C. § 636(b)(1)(A).  *ECF 13.*

---

[1]"ECF" refers to the document as numbered in the Court's Electronic Case Files.  *See The Bluebook, A Uniform System of Citation, § 10.8.3.*  Citations to pages are to those assigned by the ECF system.

Now pending is Todd's summary judgment motion. *See ECF 16*; *see also Order (ECF 9)* (construing Todd's letter in response to Court's Show Cause Order as opening brief in support of summary judgment motion). For the reasons set forth below, the Court recommends that Todd's motion be denied, and that the Commissioner's decision denying DIB be affirmed.

## I.    **PROCEDURAL BACKGROUND**

On March 25, 2010, Todd applied for DIB with a January 8, 2010 protective filing date. *AR 10, 158-59, 163.* She claimed to be disabled based on limitations imposed by fibromyalgia, back problems, and thyroid problems. *AR 191.* The Social Security Administration ("SSA") denied her application initially and upon reconsideration. *AR 88-94, 96-97*.

On May 2, 2012, an Administrative Law Judge ("ALJ") held a hearing, at which Todd was present with an attorney representing her. *AR 29-87.* On May 14, 2012, the ALJ issued a written decision denying Todd's claim for DIB. *AR 10-19.*

On October 25, 2013, the Appeals Council denied Todd's request

for review making the ALJ's decision final for purposes of judicial review. *AR 1-5*; 20 C.F.R. § 404.981 (2013). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882

(9th Cir. 2006) (internal quotation marks and citation omitted).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III.  **BURDEN OF PROOF**

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy."  *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.  The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.  If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3.  The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.  If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.  If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV.   THE ALJ's OPINION

In her written decision, the ALJ followed the five-step sequential evaluation process in considering Todd's claim. First, the ALJ found that Todd had not engaged in substantial gainful activity during the period from her alleged onset date of April 20, 2006,[2] through September 30, 2011, which is the date she was last insured for DIB. *AR 10, 12.*

Second, the ALJ found that Todd has the following severe impairments: "fibromyalgia, obesity, and left knee osteoarthritis." *AR*

---

[2]Todd later amended her alleged onset date to January 28, 2010. *AR 16, 35.*

*12.* The ALJ also noted that Todd alleged depression as a mental impairment but concluded that depression "did not cause more than minimal limitation in [Todd's] ability to perform basic mental work activities and was therefore nonsevere." *Id.*

Third, the ALJ found that Todd does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. *AR 13-15.*

The ALJ next found that Todd, during the relevant time frame, had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she could frequently balance, stoop, kneel, crouch, crawl, and climb stairs. She could occasionally climb ladders. She had no visual, manipulative, or communicative limitations. She must have avoided concentrated exposure to temperature extremes, hazardous machinery and unprotected heights.

*AR 15.*

At the fourth step of the evaluation process, the ALJ found that Todd has no past relevant work. *AR 17.*

Fifth, the ALJ found that Todd could perform jobs that exist in significant numbers in the national economy. She considered Todd's

age on her date last insured (49 years old, defined as a younger individual under the Social Security regulations), education (at least high school with the ability to communicate in English), and RFC. *AR 17-18*. Relying on testimony from a vocational expert ("VE") who also considered the aforementioned factors, the ALJ concluded that Todd could perform work in the following representative occupations: school bus monitor, cashier, garment sorter, and office helper. *AR 18*. Thus, the ALJ determined that Todd was not disabled. *AR 19*.

## V.   <u>SUMMARY OF PARTIES' ARGUMENTS</u>

In seeking review of the Commissioner's decision denying DIB, Todd, who, as noted, was represented by counsel during administrative proceedings but is proceeding *pro se* in this action, urges the Court to consider the following: (1) the effect her medical conditions have on her today, *Todd's Opening Br. (ECF 16) at 1*; (2) that she worked, without receiving monetary payment, helping to take care of her ailing mother from approximately the mid 1970s until her mother passed away in 2005, *id. at 1-2*; (3) that her "weight has never & would never stop [her] from doing what [she] want[s,]" *id. at 3*; (4) the only reason she is

unable to work now is because of the "medical issue[s] that have developed over the last few years[,]" *id.*; (5) in the fall after her mother's death, Todd's health deteriorated and doctors finally determined that she suffers from fibromyalgia, *id. at 3-4*; (6) this condition causes her to suffer from "pain, fatigue, & brain fog[,]" *id. at 4*; (7) she does not know of any job that she could perform that would allow her to perform tasks one day but excuse her from performing them on another day because she "never know[s] when [she] will be to[o] tired, hurting or when [her] brain fog will kick in ... [or] how long it will take [her] to start to recover[,]" *id.*; (8) at the time of her hearing, she was walking about 26 to 28 blocks in the morning and more in the afternoon, in addition to doing a half dozen or so different exercises, but she needed time to recuperate afterwards and never knew how long it would take her, *id. at 4-5*; (9) she would like to get disability benefits so that she could get Medicare, but also so that she could help out at home because she and her father are living off of his Social Security and she would use some of any money she receives to help with her health issues, *id. at 5*; (10)  she realizes that to some people it may look as

though she is trying to get out of working but that is not the case, *id*.;
(11) although she does engage in some activities, she does them to get
out of the house and all are things that she can "skip &/or work around"
if necessary, *id. at 6*; (12) her father takes care of household chores and
she does not like it because she is "the type that like[s] to take care of
others [and] not hav[e] someone take care of [her,]" *id*.; (13) she cannot
be depended on to be somewhere and do a job once there because her
health situation can "change on a dime[,]" *id*.; (14) it should not be held
against her that she uses her energy to keep her body moving because
doing so relieves her pain, *id. at 7*; and (15) she could not find help with
this case after her previous attorney discontinued representing her, *id.
at 8*.

The Commissioner responds that: (1) the ALJ properly considered
all medical and non-medical evidence in reaching her conclusion,
*Commissioner's Resp. Br. (ECF 17) at 10-23*; and (2) the ALJ did not err
in finding that Todd, despite her impairments and functional
limitations, was not disabled because she could perform a significant
number of jobs that exist in the national economy, *id. at 23-25*.

In reply, Todd argues that: (1) the process of seeking DIB has caused her further stress to her health, *Todd's Reply Br. (ECF 19) at 2*; (2) she has gained weight during the process that she previously had lost, *id*.; (3) her medical conditions continue to prevent her from working, *id*.; (4) if she could go through the process again, she would let her doctors know how bad her conditions were for her and would not always put on a "brave face[,]" *id. at 3*; and (5) the Court should not only search the law but also its "heart to come to the right answer" in this case, *id. at 4.*

Affording all of Todd's arguments liberal construction in light of her *pro se* status, *see Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc) (citation omitted), the Court discerns three principal arguments from her request for judicial review of the ALJ's decision denying her DIB: (1) that the ALJ committed legal error by improperly determining that Todd's allegations lack credibility; (2) that the ALJ's decision is not supported by substantial evidence; and (3) that the ALJ erred in concluding that there is work that Todd is capable of

performing.[3]

## VI.  <u>DISCUSSION</u>

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the ALJ's decision is based on substantial evidence in the record, and is free of harmful legal error.  Therefore, the Court recommends that the decision be affirmed.

### A.  <u>ALJ's Consideration of the Evidence</u>

In evaluating Todd's claims, the ALJ was required to "make fairly detailed findings in support" of her decision "to permit courts to review

_____

[3]The Court is mindful that the general rule of liberally construing *pro se* litigants' pleadings and affording such litigants the benefit of any doubt is much less pronounced when a *pro se* litigant challenges an administrative agency's application and interpretation of its own laws and regulations.  *Cummins v. Barnhart*, 460 F.Supp.2d 1112, 1117 (D. Ariz. 2006).  "The interpretation of statutes and regulations by an agency charged with their administration is entitled to due deference and should be accepted unless demonstrably irrational or clearly contrary to the plain meaning."  *Id*. (*quoting Adams v. Bowen*, 872 F.2d 926, 929 (9th Cir. 1989) (citations and internal quotations omitted) and *citing Chevron, U.S.A. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984)).

th[at] decision[ ] intelligently." *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted). In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed decision. *AR 10-19*. She clearly stated her rationale for rejecting some evidence in her assessment of Todd's medical records, credibility, and RFC. *Id.* The ALJ also set forth the evidence – which the Court concludes is substantial – that informed and supported her conclusion with respect to Todd's disability claim. *Id.* For these reasons, and after the Court's own review of the entire record, the Court finds that the ALJ properly considered all evidence. In short, the ALJ did not err.

## B.    ALJ's Assessment of Todd's Credibility

In *Molina v. Astrue*, the Ninth Circuit restated the long-standing standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony
> regarding subjective pain or the intensity of symptoms, the

ALJ engages in a two-step analysis. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms. At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A). In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation. For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the

symptoms alleged. *AR 15.* Also, the ALJ did not find that Todd was

malingering. Thus, to find that Todd was not entirely credible, the ALJ

had to give specific, clear, and convincing reasons. The Court concludes

that she did.

First, the ALJ observed that objective medical evidence of record

did not support Todd's allegations respecting her functional limitations.

For example, the ALJ referred to medical records from Todd's treating

physician, Dr. Kristopher Cunningham, respecting Todd's fibromyalgia.

As discussed below, the ALJ noted that the records indicated that

Todd's functional limitations were not as severe as Todd alleged.

Beginning with records of an initial visit to establish care with

Dr. Cunningham on January 28, 2010, the ALJ noted that records from

five monthly visits with Dr. Cunningham revealed essentially normal

examinations with findings inconsistent with Todd's complaints of

chronic pain. *AR 16.* The ALJ noted that Dr. Cunningham, upon

examining Todd, "merely prescribed cyclobenzaprine for fibromyalgia,

... told [Todd] to exercise to lose weight[,]" noted she had normal

physical exams, and was in no distress. *Id.* The ALJ wrote that Dr.

Cunningham also noted that he had noticed Todd "'energetically' walking through the hospital prior to [an] exam," that he had performed a physical examination of Todd that was "benign[,]" and that he was told by Todd that muscle relaxers and massage helped relieve her pain. *Id.*

The ALJ noted that, in a subsequent appointment in September 2010, Dr. Cunningham recorded that Todd said she was able to walk 28 blocks every day of the week and that she had done so for some time. And, Dr. Cunningham again noted a normal examination. *Id.* In discussing medical records from a February 2011 visit with Dr. Cunningham, the ALJ noted that, although Todd was still complaining of pain and fatigue from fibromyalgia, she nevertheless had an "unremarkable" physical examination and was still able to take care of her elderly father, who had just undergone hip replacement. *Id.* The ALJ further noted that this examination revealed that Todd had normal thyroid levels. *Id. at 16-17.* In sum, the ALJ found the medical evidence of record inconsistent with Todd's allegations respecting her functional limitations.

Second, the ALJ noted that Todd's activities of daily living do not support an allegation that her conditions are so functionally limiting as to prevent her from engaging in any substantial gainful activity. For instance, the ALJ noted that Todd, by her own reports: (1) provided care for her elderly father; (2) performed her own personal care; (3) prepared meals; (4) drove a vehicle; (5) shopped for groceries; (6) cleaned her home; (7) washed laundry; (8) visited people in a nursing home three days each week; (9) attended public auctions; and (10) walked 28 blocks each day, every day. *AR 12-13, 16-17.*

The Court thus concludes that the ALJ did not err. In reaching her conclusion respecting Todd's credibility, the ALJ employed ordinary credibility evaluation techniques, as she was permitted to do. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (setting forth what an ALJ may consider in determining a claimant's credibility); *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). Todd is simply urging the Court to reweigh the evidence, and to arrive at a conclusion different from that reached by the ALJ. The Court is not permitted to do so. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).

In sum, the Court concludes that the ALJ gave specific, clear, and convincing reasons for finding that Todd was not credible to the extent she alleges inability to perform all work activity. Thus, the ALJ did not err.

**C.** **ALJ's Assessment of Medical Evidence**

As noted above, Todd's treating physician, Dr. Cunningham, recorded in his notes essentially normal and unremarkable findings resulting from multiple examinations of Todd. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Ghanim v. Colvin*, ___ F.3d ___, 2014 WL 4056530, at *5 (9th Cir. 2014) (*quoting Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (internal quotations omitted) (alterations in original) and 20 C.F.R. § 404.1527(c)(2)).

The ALJ addressed in her written decision two opinions somewhat at odds with Dr. Cunningham's assessments of Todd's impairments and resulting functional limitations. First, the ALJ noted

the opinion of Cindy Kennedy ("Kennedy"), a non-treating occupational therapist, who, in a functional capacity evaluation summary prepared in January 2012, "opined that [Todd] could not perform sustained work activity" and noted that Todd could walk only 1.5 minutes at a time during a workday." *AR 17* (referring to *AR 353-55*).

Second, the ALJ discussed a letter written on March 30, 2011, by Mike Mikulski ("Mikulski"), a Montana Vocational Rehabilitation counselor. According to the letter, the ALJ noted, Mikulski and Todd spoke on the telephone and, "based on [Todd's] subjective reports of pain, fatigue, and decreased stamina, [Todd] was unable to explore working." *AR 17* (referring to *AR 222*).

Only those qualified specialists listed in 20 C.F.R. § 404.1513(a) are considered "acceptable medical sources," including licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. Those individuals designated as "other sources" under 20 C.F.R. § 202.1513(d) include nurse practitioners, physicians' assistants, therapists, counselors, and clergy. The opinions of such "other sources" are not entitled to the same deference afforded

"acceptable medical sources" and an "ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3 at 1111 (citations omitted).

Here, assuming for purposes of this case that Kennedy and Mikulski are "other sources" whose opinions must be evaluated, the Court concludes that the ALJ did not err in giving both Kennedy's opinion and Mikulski's letter no weight.

Respecting Kennedy's opinion, the ALJ provided four specific and legitimate reasons for rejecting it. First, the ALJ noted that Kennedy saw Todd only one time, and it was after the expiration of Todd's insured status. *AR 17*. Second, the ALJ noted that Kennedy's opinion was based on Todd's subjective reports to her. *Id*. Third, the ALJ noted that those subjective reports were not entirely supported by objective findings, as the above discussion of Dr. Cunningham's treatment records reveals. *Id*. Finally, the ALJ noted that Kennedy's proposed limitations were exaggerated. She cited as an example Kennedy's observation that Todd's walking is limited to 1.5 minutes at a time which is contradicted by Todd's own repeated representation

that she walks 28 blocks a day every day. *Id.* The Court concludes that the ALJ gave germane reasons for rejecting Kennedy's opinion and thus did not err.

Respecting Mikulski's letter, the ALJ gave it no weight "because it was not based on any objective testing or observation of [Todd], but merely her subjective complaints in a phone conversation." *Id.* In light of the lack of objective medical evidence supporting Todd's allegations respecting her functional limitations, the Court concludes that the ALJ provided germane reasons for rejecting the Mikulski letter. The ALJ did not err.

### D.    ALJ's Consideration of Vocational Expert's Opinion

In her opening brief, Todd suggests that the ALJ erred in concluding that Todd could perform certain jobs that exist in significant numbers in the national economy. *ECF 16 at 6.* The Court is not persuaded.

As discussed above, the Court has already determined that the ALJ based her decision on substantial evidence in the record. And it has concluded that the ALJ did not err either in her assessment of the

medical evidence or in her assessment of Todd's credibility regarding

her symptoms and limitations. The ALJ was not required to include in

her hypothetical question to the vocational expert Todd's symptoms and

limitations not supported by the record. *Osenbrock v. Apfel*, 240 F.3d

1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject

restrictions in a hypothetical question that are not supported by

substantial evidence."). Rather, the ALJ was free to consider the

evidence as a whole in making her determination as to Todd's

limitations. The Court concludes she did so, and thus she did not err.

## VII.  CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that the

Commissioner's decision denying DIB be affirmed and that Todd's

motion for summary judgment (*ECF 16*) be DENIED

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall

serve a copy of the Findings and Recommendations of the United States

Magistrate Judge upon the parties. The parties are advised that

pursuant to 28 U.S.C. § 636, any objections to these findings must be

filed with the Clerk of Court and copies served on opposing counsel

within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 1st day of October, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge